**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

JEREMY GAY as the Wrongful Death Personal
Representative of the ESTATE OF RODNEY LYNCH,
RHONDA LYNCH, Individually and on behalf
of L.N.L., a Minor Child, SHENALE LEANN TSO,
Individually, MELANIE LYNN LYNCH, Individually,
and AMBER REE LYNCH, Individually,

Plaintiffs,

vs.                                                                No. 1:21-cv-00604-LF-KK

JUSTIN OLVERA, in his individual capacity,
ELIJAH BOWMAN, in his individual capacity,
CITY OF GALLUP, a Municipal Corporation
of the State of New Mexico, and GALLUP
POLICE CHIEF FRANKLIN BOYD,

Defendants.

## COMPLAINT FOR CIVIL RIGHTS VIOLATIONS, LOSS OF CONSORTIUM AND THE WRONGFUL DEATH OF RODNEY LYNCH

COME NOW Plaintiffs Jeremy Gay, as the Wrongful Death Personal Representative of

Rodney Lynch, deceased, Rhonda Lynch, individually and on behalf of L.N.L., a minor child,

Shenale Leann Tso, Individually, Melanie Lynn Lynch, Individually and Amber Ree Lynch,

Individually, by and through their attorneys of record, Keeler & Keeler, LLP (William R.

Keeler), and bring this Complaint for violation of Rodney Lynch's Civil Rights under the Fourth

Amendment to the United States Constitution and 42 U.S.C. § 1983. In support of their

Complaint, Plaintiffs state as follows:

1

## Preliminary Statement

On June 28, 2019, Defendants Justin Olvera and Elijah Bowman, acting in the course and scope of their respective employment as Community Service Aids (CSAs)/Public Service Officers (PSOs) with the City of Gallup Police Department attempted to remove Mr. Rodney Lynch from the CSA/PSO van at Na'Nizhoozhi Center, Incorporated (NCI), an alcohol and drug rehabilitation center in Gallup, McKinley County, New Mexico. As Mr. Lynch came out of the van, Mr. Lynch was pushed against the CSA/PSO van and taken down to the ground by Defendants Olvera and Bowman in which Defendant Olvera held Mr. Lynch in a choke hold while Bowman jumped on his back until Mr. Lynch lost consciousness. Mr. Lynch was transported to Gallup Indian Medical Center and then flown out to Presbyterian Hospital. Mr. Lynch died on July 02, 2019.

## Jurisdiction and Venue

This Court has subject matter jurisdiction of this action pursuant to 42 U.S.C. §§ 1983 and 1988 and 28 U.S.C. § 1343. The Court has personal jurisdiction over the parties and venue is proper in this district, as Defendants Olvera, Bowman and Boyd are New Mexico residents and their respective employer is the City of Gallup. The incident that gives rise to this action occurred in New Mexico.

## Parties

1.     Jeremy Gay, an attorney licensed to practice law in the State of New Mexico was appointed as Personal Representative of the Wrongful Death Estate of Rodney Lynch on July 31, 2020 to investigate and file claim(s) on behalf of Mr. Lynch's Wrongful Death Estate. Mr. Gay's residence and principle place of business are located in Gallup, McKinley County, New Mexico.

2.     Plaintiff Rhonda Lynch ("Plaintiff") is a resident of Window Rock, Apache County, Arizona, is the mother of three of Rodney Lynch's daughters and was married to Rodney Lynch at the time of his death.

3.     Plaintiff Rhonda Lynch is the biological mother and next friend of L.N.L., a minor child.  L.N.L. is the biological daughter of Rodney Lynch.

4.      The decedent, Rodney Lynch was a lifelong resident of the State of Arizona, and resided in the County of Apache at the time of his death. Rodney Lynch was a 42-year-old Navajo Nation Employee, married for eighteen (18) years to Rhonda Lynch and father to three daughters with Rhonda and one daughter from a previous relationship.  Rodney Lynch was born in Fort Defiance, Apache County, Arizona.

5.     Plaintiff Shenale Leann Tso ("Plaintiff") is the biological daughter of the decedent and is a resident of Tuba Cuba City, Coconino County, Arizona 86045.

6.     Plaintiff Melanie Lynn Lynch ("Plaintiff") is the biological daughter of the decedent and is a resident of Window Rock, Apache County, Arizona 86515.

7.     Plaintiff Amber Ree Lynch ("Plaintiff") is the biological daughter of the decedent and is a resident of Window Rock, Apache County, Arizona 86515.

8.     Upon information and belief, Defendant Justin Olvera ("Olvera") is a resident of McKinley County, New Mexico.  At all times relevant to this Complaint, Olvera was acting under color of law within the course and scope of his employment as a Community Service Aid/Public Service Officer ("CSA/PSO") with the City of Gallup Police Department.

9.     Upon information and belief, Defendant Elijah Bowman ("Bowman") is a resident of McKinley County, New Mexico.  At all times relevant to this Complaint, Bowman was

acting under color of law within the course and scope of his employment as a Community Service Aid/Public Service Officer ("CSA/PSO") with the City of Gallup Police Department.

10.     Upon information and belief, Defendant City of Gallup ("City") is the governmental entity subject to suits for damages caused by City of Gallup employees and officials.  At all times relevant to this Complaint, the City employed and was charged with exercising direct supervisory control over Defendants Olvera, Bowman and Boyd.

11.     Defendant City of Gallup ("City") is a municipal corporation organized under the laws of the State of New Mexico, with its principal place of business located in Gallup, McKinley County, New Mexico.

12.     At all material times, Franklin Boyd ("Boyd") is the Chief of Police of the Gallup Police Department, with supervisory authority over all CSAs, PSOs, peace officers and operations of the Gallup Police Department, including responsibility for recruiting, hiring, training, disciplining, and managing all CSAs, PSOs and peace officers employed and certified by the Gallup Police Department.

13.     The City of Gallup operates and oversees the Gallup Police Department's Community Service Aid/Public Service Officer division within the Gallup Police Department.

**Factual Allegations**

14.     On or about June 28, 2019, Defendants Justin Olvera ("Olvera") and Elijah Bowman ("Bowman") were on duty and working as CSAs/PSOs with the City of Gallup Police Department.

15.     On or about June 28, 2019, Nicola Martinez-Collins ("Martinez-Collins") was on duty and working in her capacity as a police officer with the City of Gallup Police Department.

16.     On the evening of June 28, 2019, Rodney Lynch was picked up by Bowman from the Rio West Mall in Gallup, New Mexico for transport to NCI, an alcohol/drug rehabilitation center.

17.     When Lynch arrived at NCI, Olvera was already there after being contacted via text message by Bowman to assist Bowman with removing Mr. Lynch from the CSA/PSO van.

18.     As Mr. Lynch exited the CSA/PSO van, he was immediately pushed against the CSA/PSO van then taken to the ground by Olvera and Bowman.

19.     Mr. Lynch landed on the ground in a prone position and Olvera placed Mr. Lynch in a front choke hold, putting a considerable amount of weight on Mr. Lynch, while Bowman jumped on the back of Mr. Lynch claiming he was trying to handcuff Mr. Lynch.

20.     Mr. Lynch tried to tap on Olvera's arm in an attempt to alert the CSAs/PSOs that he was unable to breathe, but both Olvera and Bowman continued to hold Mr. Lynch down, Mr. Lynch began violently jerking in response to being choked.  He kicked off one shoe and wet himself.

21.     Mr. Lynch was held in a prone position with a front choke hold until Mr. Lynch was handcuffed by Officer Nicola Martinez-Collins even though Mr. Lynch was unresponsive.

22.     Martinez-Collins noticed that Mr. Lynch was unresponsive, was not breathing when she rolled him over and she began performing cardiopulmonary resuscitation.

23.     As a result of the excessive force described herein, including being held in a choke hold, Rodney Lynch died on July 02, 2019.

24.     Mr. Lynch had not committed a crime when he was being transported to NCI.

25.     Throughout the entire incident with Olvera and Bowman, Mr. Lynch was non-threatening, and at no time did he take a single action that would demonstrate that he presented any risk of danger to both Olvera and Bowman.

26.     At no time did Rodney Lynch objectively pose a danger to anyone, nor did he present any threat of deadly force to Olvera, Bowman and/or any individuals and/or officers on scene that evening.

27.     The lethal force that Olvera and Bowman used upon Mr. Lynch was unnecessary and excessive under the circumstances.

28.     Prior to engaging in their unlawful actions, including the use of unnecessary excessive and deadly force on Mr. Lynch, who posed no threat to any CSAs/PSOs, officers, himself, or the public, Olvera and Bowman had a duty to critically evaluate the facts upon which they should rely to support their actions, and to determine if such actions were necessary and in good faith under the totality of the circumstances.

29.     Olvera and Bowman failed to exercise this duty.

30.     At all times, Olvera was an employee of the City of Gallup Police Department and was acting in the course and scope of his employment.

31.     At all times, Bowman was an employee of the City of Gallup Police Department and was acting in the course and scope of his employment.

32.     As a result of their failure to correct the deficiencies in their policies and procedures, in particular those regarding the use of force, the City and Boyd are liable to Plaintiffs under 42 U.S.C. § 1983.

### Count I - Excessive Use of Force in Violation of Rodney Lynch's Fourth Amendment Rights and 42 U.S.C. §1983

33.     Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

34. Olvera and Bowman's actions on the evening of June 28, 2019 caused the untimely and unlawful death of Rodney Lynch.

35. Olvera held Mr. Lynch in a choke hold for approximately (1.5) minutes while Bowman was on top of Mr. Lynch's back holding Mr. Lynch down.

36. Olvera and Bowman's actions in holding down Mr. Lynch, applying a front choke hold and their use of force were excessive, objectively unreasonable, and unnecessary.

37. Mr. Lynch did not threaten Olvera or Bowman or anyone else prior to being pushed, forced to the ground and placed in a choke hold until he stopped breathing.

38. Mr. Lynch had not committed a crime nor was he armed or considered dangerous.

39. Olvera and Bowman's actions were intentional, willful, wanton, and in gross and reckless disregard of Mr. Lynch's rights.

40. At the time of this incident, it was clearly established that the Defendants' conduct as alleged herein violated Mr. Lynch's constitutional right not to be subjected to excessive force.

41. Plaintiffs are entitled to compensatory and punitive damages, pain and suffering damages, emotional pain and suffering damages against Olvera and Bowman, along with attorneys' fees, pre and post judgment interest and costs of this action.

### Count II - Municipal Liability under the Fourth Amendment and 42 U.S.C. § 1983 (City)

42. Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

43. Rodney Lynch had a right under the Fourth Amendment to the United States Constitution to be free from excessive use of force.

44. The City deprived Rodney Lynch of his Fourth Amendment rights when its

formal written use of force policies allowed Defendants Olvera and Bowman to intentionally, recklessly and suddenly escalate force with no provocation, resulting in Rodney Lynch's death.

45.     The City owes a duty of reasonable care to the public, including Mr. Lynch, in recruiting, hiring, and training its CSAs/PSOs and officers.  The City failed to adequately address hiring, training, supervision issues, failed to implement adequate policies and procedures regarding allegedly intoxicated individuals and the use of force.  This continuous failure on the City's part directly caused the unnecessary suffering and death of Mr. Lynch, and deprived him of his constitutional right to be free from the use of excessive force.

46.     The City continued its deliberate indifference to its unconstitutional written policies and has made no effort to change those policies to comply with well established law. See, *Graham v. Connor*, 490 US 386 (1989).  Instead, the City has an informal policy of encouraging and allowing the use of excessive force against individuals such as Mr. Lynch.

47.     The systemic deficiencies in oversight, training, discipline and policies of the City were a direct and proximate cause of Olvera and Bowman's unreasonable use of excessive and deadly force against Mr. Lynch in direct violation of the Fourth Amendment to the United States Constitution and 42 U.S.C. § 1983 as alleged  in Count I of this Complaint.

48.     The wrongful death of Mr. Lynch was a direct and foreseeable result of the City's failure to adequately investigate and address deficiencies in use of force, and to encourage and allow the excessive use of force.   The City has created a culture in the City of Gallup Police Department in which any use of excessive force will be condoned and excused by the chain of command as long as CSAs/PSOs and/or officers utter the words "I felt threatened," or as Olvera stated in his interview, "I was scared."

49.     The City's above-described failure to adequately investigate and address violations in their policies and practices regarding the use of force and to encourage and allow the excessive use of force were a direct and proximate cause of the deadly battery and resultant suffering of Mr. Lynch at the hands of Olvera and Bowman, and for which the City is liable under 42 U.S.C. § 1983.

50.     The City knew at the time of the incident, that the City's formal written use of force policy as well as its unwritten policy of encouraging and tolerating the use of excessive force are  unconstitutional.  The City knows that its CSAs/PSOs and/or officers often use excessive and deadly force in a manner that violates the Fourth Amendment and 42 U.S.C. § 1983.

51.     The City of Gallup is liable for excessive force when CSAs/PSOs and/or officers act according to unconstitutional policies of the municipality, both written and unwritten.

52.     The City, at the time of the incident, failed to require that the Gallup Police Department implement an objective and rigorous internal accountability system.  Excessive force incidents, such as this subject incident, have not been properly investigated, documented, or addressed with corrective measures. These omissions have ratified and encouraged the unconstitutional conduct of Olvera, Bowman and other officers of the Gallup Police Department.

53.     The City's lack of internal oversight and supervision has allowed and encouraged a culture of aggression within the Gallup Police Department, promoting an acceptance of unlawful use of deadly force and causally contributing to the preventable death of Mr. Lynch.

54.     At the time of this incident, it was clearly established that the Defendants' conduct as alleged herein violated Mr. Lynch's constitutional right not to be subjected to excessive force.

55.     As a direct and proximate result of Olvera and Bowman's unconstitutional use of excessive force, Mr. Lynch was wrongfully killed.

56.     Because Olvera and Bowman were acting within the course and scope of their employment for the City when they engaged in the extreme and reckless behavior that caused Mr. Lynch's death, and since Olvera and Bowman's behavior is the direct result of the City's failure to address and correct the deficiencies in their policies and procedures regarding the use of force and the City's actual and constructive knowledge that deaths and serious injuries were likely to occur, the City is liable under 42 U.S.C. §1983.

57.     Plaintiffs are entitled to compensatory damages as well as the costs of this action and attorneys' fees, pre and post judgment interest and to injunctive relief requiring the City and its employees to avoid the use of excessive force and to implement policies and procedures to curb constitutional violations such as those alleged herein.

### Count III - Supervisory Liability under the Fourth Amendment and 42 U.S.C. § 1983 (Boyd)

58.     Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

59.     As Acting Chief of Police, Boyd was at all times relevant to this Complaint, personally responsible for overseeing the training and supervision of the CSAs/PSOs and officers of the Gallup Police Department and implementing, upholding, and ensuring their compliance with Gallup Police Department's policies and procedures with regard to handling allegedly intoxicated individuals and use of force.

60.     Boyd's actions and inactions with respect to his responsibilities set in motion a

series of events that he knew or reasonably should have known would cause others to deprive Mr. Lynch of his constitutional rights. Boyd created, actively endorsed and/or implemented formal and informal unconstitutional policies.

61. As a direct and proximate result of Boyd's failure to enforce Gallup Police Department policies and procedures regarding use of force, his acceptance of unconstitutional policies and procedures and his tacit approval of the inadequate training and supervision of Olvera and his failure to address Olvera's past behavior from early on, Olvera's behavior was allowed to escalate, resulting in his deadly use of force against Mr. Lynch, in violation of the Fourth Amendment and 42 U.S.C. § 1983 as alleged in Count I of this Complaint.

62. As a direct and proximate result of Boyd's failure to enforce Gallup Police Department policies and procedures regarding use of force, his acceptance of unconstitutional policies and procedures and his tacit approval of the inadequate training and supervision of Bowman and his failure to address Bowman's past behavior from early on, Bowman's behavior was allowed to escalate, resulting in his deadly use of force against Mr. Lynch, in violation of the Fourth Amendment and 42 U.S.C. § 1983 as alleged in Count I of this Complaint.

63. Boyd acted willfully, wantonly, recklessly, intentionally, and with deliberate indifference in condoning and allowing policies and procedures in his department to go unchecked, which directly and proximately resulted in depriving Rodney Lynch of his constitutional right to be free from the excessive use of force by Olvera and Bowman while they were acting in the course and scope of their respective employment as CSAs/PSOs of the Gallup Police Department.

64. Mr. Lynch's wrongful death was a predictable consequence of Boyd's deliberate

indifference to the constitutional rights of individuals such as Mr. Lynch, for which Boyd is liable in his individual capacity under 42 U.S.C. § 1983.

65.     At the time or this incident, it was clearly established that the Defendants' conduct as alleged herein, violated Mr. Lynch's constitutional right not to be subjected to excessive force.

66.     Plaintiffs are entitled to compensatory and punitive damages,  pain and suffering damages, emotional pain and suffering damages against Boyd in his individual capacity, along with attorneys' fees, costs of this action, pre and post judgment interest and to injunctive relief requiring Boyd to implement policies and procedures to curb constitutional violations such as those alleged herein

### Count IV- Loss of Consortium
### (Rhonda Lynch and Minor Child, L.N.L.)

67.     Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

68.     Plaintiff Rhonda Lynch shared a close, intimate relationship with Rodney Lynch for eighteen (18) years as husband and wife.

69.     Rodney Lynch, Rhonda Lynch, and the minor child, L.N.L. lived in the same residence at the time of the death of Rodney Lynch.

70.     Rodney Lynch contributed household services, financial support, companionship and emotional support to Rhonda Lynch and minor child L.N.L.

71.     It was reasonably foreseeable that Rhonda Lynch and minor child, L.N.L. would be harmed by the death of their husband and father.

72.     At the time of the incident, it was reasonably foreseeable that the reckless actions by Defendants Olvera and Bowman would result in the loss of consortium and loss of household services of the family members of a person injured or killed as a result of such

unconstitutional and extreme actions.

73.     As a result of the actions of all Defendants, Rhonda Lynch has lost the society, companionship, guidance, emotional support and sexual relations she enjoyed as the wife of Rodney Lynch.

74.     As a result of the actions of all Defendants, minor child L.N.L. is now forced to live without the companionship, guidance, love, care, emotional support, and financial support of her father, Rodney Lynch.

75.     Rhonda Lynch's loss of consortium has resulted in emotional distress and economic damages, both to her and her children.

76.     Defendants are liable for the consortium loss suffered by Rhonda Lynch and the minor child, L.N.L..

77.     As Rodney Lynch's death was caused by the recklessness of Defendants and the excessive use of force policy of the Gallup Police Department and the City, Plaintiffs are entitled to compensatory damages, punitive damages, emotional pain and suffering damages, lost love damages, lost companionship damages, loss of financial support damages, and loss of enjoyment of life as well as the costs of this action and attorneys' fees, pre and post judgment interest.

### Count V- Loss of Consortium
### (Adult Children of Rodney Lynch)

78.     Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

79.     The daughters, Melanie Lynn Lynch, Amber Ree Lynch and Shenale Leann Tso shared a close familial relationship with their father, Rodney Lynch.

80.     The daughters, Melanie Lynn Lynch and Amber Ree Lynch lived in the same residence at the time of their father's death.

81.     Rodney Lynch contributed household services, financial support, companionship, and emotional support to his daughters, Melanie Lynn Lynch, Amber Ree Lynch and Shenale Leann Tso.

82.     It was reasonably foreseeable that Rodney Lynch's daughters, Melanie Lynn Lynch, Amber Ree Lynch and Shenale Leann Tso would each be harmed by the death of their father.

83.     As a result of the actions of all Defendants, Melanie Lynn Lynch, Amber Ree Lynch and Shenale Leann Tso are now forced to live without the companionship, guidance, love, care, emotional support, and financial support of their father, Rodney Lynch.

84.     As a direct result of the acts and omissions of all Defendants, Melanie Lynn Lynch, Amber Ree Lynch and Shenale Leann Tso now suffer permanent damages including emotional pain and suffering, lost love, lost companionship, care, loss of financial support, and loss of enjoyment of life.

85.     Defendants are liable for the consortium loss suffered by Melanie Lynn Lynch, Amber Ree Lynch and Shenale Leann Tso.  Plaintiffs are entitled to compensatory damages, punitive damages, emotional pain and suffering damages, lost love damages, lost companionship damages, loss of financial support damages, and loss of enjoyment of life as well as the costs of this as well as the costs of this action and attorneys' fees, pre and post judgment interest.

## Jury Demand

86.     Plaintiffs respectfully request a trial by jury.

WHEREFORE Plaintiffs respectfully request that judgment be entered against the Defendants for all damages requested herein, costs of this action, pre and post judgment

interest, and any other relief that the Court deems just and proper.

Respectfully submitted,

KEELER & KEELER, LLP

*/s/ William R. Keeler*
William R. Keeler
Keeler & Keeler, LLP
235 West Historic Highway 66
Gallup, New Mexico 87301
Telephone: (505) 722-5608
Facsimile: (505) 722-5614
*Attorney for Plaintiffs*