IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JEREMY GAY as the Wrongful Death Personal
Representative of the ESTATE OF RODNEY LYNCH,
RHONDA LYNCH, Individually and on behalf
of L.N.L., a Minor Child, SHENALE LEANN TSO,
Individually, MELANIE LYNN LYNCH, Individually,
and AMBER REE LYNCH, Individually,

                              Plaintiffs,

vs.                                                                           No. 1:21-cv-00604-JCH-KK

JUSTIN OLVERA, in his individual capacity,
ELIJAH BOWMAN, in his individual capacity,
CITY OF GALLUP, a Municipal Corporation
of the State of New Mexico, and GALLUP
POLICE CHIEF FRANKLIN BOYD,

                              Defendants.

## PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

COME NOW Plaintiffs Jeremy Gay, as the Wrongful Death Personal Representative of Rodney Lynch, deceased, Rhonda Lynch, individually and on behalf of L.N.L., a minor child, Shenale Leann Tso, Individually, Melanie Lynn Lynch, Individually and Amber Ree Lynch, Individually, by and through their attorneys of record, Keeler & Keeler, LLP (William R. Keeler), and hereby respond to the Defendants' Motion for Summary Judgment.

The Motion is without adequate support as to all grounds on which it is based as set forth in more detail below. It must be denied.

*Introduction*

On June 28, 2019, Defendant Bowman was dispatched to the Rio West Mall after a 911 call reporting an intoxicated man. Bowman responded and attempted to persuade Rodney

1

Lynch, the intoxicated man, to enter a transport van. When Lynch refused and stated that he wanted to walk home, Bowman used force to prevent Lynch from leaving and to get him to the ground, in violation of the Gallup Police Department's Policies and Procedures. In further violation, Bowman failed to transfer Lynch to a sworn Gallup Police Officer who arrived at the scene, but instead put Lynch into the transport van.

En route to the Na'Nizhoozhi Center, Incorporated (NCI), Lynch pounded on the side of the van several times. It is very common for intoxicated individuals to hit the side of the transport van en route to the NCI. Nonetheless, Bowman believed he would need assistance controlling Lynch upon arrival at NCI. Instead of calling for a sworn Police Officer to meet him at NCI as is required by the Policies and Procedures, Bowman directed his ride- along to text fellow CSA Justin Olvera to meet him at NCI to help him physically restrain Lynch.

When Lynch exited the van at NCI, both Olvera and Bowman wrestled him to the ground and held him there. Olvera put Lynch in a choke hold and Bowman lay across Lynch's body to hold him down. All of these acts are prohibited by the City's Use of Force Policy, and are not taught to officers during training. Choke holds, in particular, are emphatically not permitted under the City's Use of Force policy and are considered to be excessive force prohibited by the New Mexico and United States Constitutions and a number of cases now set forth in the policy.

Sergeant Martinez-Collins arrived on the scene helped to handcuff Lynch, but did nothing to stop the actions of Bowman and Olvera. Lynch was rolled over and found to be unconscious and non-responsive. Subsequent attempts to revive him were unsuccessful. Lynch was transported to a hospital in Albuquerque, where he died three days later without regaining consciousness.

Lynch's reactions were not a life threatening situation at any time, nor did he pose an immediate safety threat to Olvera or Bowman. Under the City's Use of Force policy, they should have disengaged instead of engaging in excessive and fatal force. Lynch's death was not only "unfortunate" (Defendants' Motion at p. 3), it was wrongful and entirely avoidable. Olvera was terminated from his employment for his conduct, and Bowman was suspended without pay.

The Office of the Medical Investigator ("OMI") ruled Lynch's death a homicide caused by the inappropriate, unreasonable and excessive force used by Bowman and Olvera. Disputed and undisputed facts demonstrate that the Gallup Police Department failed to properly train Officer Elijah Bowman and Officer Justin Olvera in the following areas: De-escalation and Defusing techniques, Basic Physiology of the Struggle, Neck Restraints, Compressional Asphyxiation, Positional Asphyxiation and Restraint Asphyxiation. This failure was a proximate cause of the unnecessary death of Rodney Lynch.

## SUMMARY JUDGMENT STANDARD

*Rule 56*

Viewing the evidence in the light most favorable to the party opposing the motion, this Court "must determine 'whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict.'" *Smith v. Maschner*, 899 F.2d 940, 943 (10th Cir. 1990), quoting *Smith Machinery Co. v. Hesston Corp.*, 878 F.2d 1290, 1294 (10th Cir. 1989) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986) and citing *Missouri Pac. R.R. v. Kansas Gas & Elec. Co.*, 862 F.2d 796, 798 (10th Cir. 1988). If so, summary judgment in favor of the defendant is unwarranted. The Plaintiffs are entitled to a trial on the merits if the Defendants cannot show that there is no dispute as to any material fact and that they are thus entitled to judgment as a matter of law. Fed. R. Civ.P. 56(a).

Not only are each of the material facts recited by the Defendants disputed, but they are incomplete. Viewing the facts set forth below in the light most favorable to the Plaintiffs, it is clear that the Defendants are not entitled to judgment as a matter of law.

*Qualified Immunity*

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009) (internal quotation marks omitted). The doctrine "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." If a defendant asserts qualified immunity, the plaintiff has the burden to show that "(1) the defendant violated a constitutional right and (2) the constitutional right was clearly established" at the time of the challenged conduct. *Morris v. Noe*, 672 F.3d 1185, 1191 (10th Cir. 2012) (internal quotation marks omitted); *Pearson*, 555 U.S. at 232. In general, "[t]he law is clearly established when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as plaintiff maintains." *Dodds v. Richardson*, 614 F.3d 1185, 1206 (10th Cir. 2010) (internal quotation marks omitted)."

The Gallup Police Department's Rules and Procedures implemented shortly after Lynch was killed recites its reliance on clearly established law on which policies are based. For example, it cites to *Graham v. Connor*, 490 U.S. 386, 388 (1989) (excessive force claims should be analyzed under the Fourth Amendment's "objective reasonableness" standard rather than

4

under substantive due process standard); *Tenn. v. Garner*, 471 U.S. 1 (1985) (deadly force is only allowed to apprehend felons who the police had probable cause to believe were dangerous to them or to the public); *Quezada v. County of Bernalillo*, 944 F.2d 710 (10th Cir. 1991) ("reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation) and other resources all pre-dating the Lynch homicide by many years.

Accordingly, if there is a genuine issue of material fact as to whether Bowman or Olvera's actions leading to the death of Lynch were objectively reasonable or unreasonable, they are not entitled to qualified immunity. The facts establish that their actions were, at best, subjectively "reasonable" and were objectively unreasonable under the well established legal standards they violated and the City's policies and procedures in which they should have been trained. They were both disciplined for their conduct They are not entitled to qualified immunity.

**PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT OF FACTS**

1. In many ways, CSAs are virtually indistinguishable from certified and sworn GPD officers. Controverts Defendants' Fact No. 4.

Affidavit of Gallup City Manager Maryann Ustick submitted in Support City of Gallup's Brief in Support of its Motion for Summary Judgment in *City of Gallup v. Hart* (Exhibit "A" hereto). Ustick's affidavit is attached as Exhibit "B" hereto at ¶¶ 7, 8, 9, 10, 11, 12.

2. CSAs have arrest powers because they are authorized and directed to detain suspects and to hold them in custody until a sworn officer arrives to make a formal arrest. Controverts Defendants' Fact No. 4.

Affidavit of John Allen (Exhibit "C" hereto); Exhibit "B" at ¶ 9 (CSAs are issued handcuffs).

3. CSAs are required to transport persons being detained, including prisoners and arrestees. Controverts Defendants' Fact No. 4.

Exhibit "C", Exhibit "A" at p. 6, ¶¶ 15, 16; Exhibit "D" at 115.02(A), 115.02(B), 115.02 C.

4. CSAs are often used to maintain public order and are used to control crowds and traffic. Controverts Defendants' Fact No. 4.

Exhibit "C"; Exhibit "D" at Rule 115.03.

5. During their interaction with Lynch, Olvera and Bowman should have had their microphones on, but did not. Controverts and supplements Defendants' Fact No 7.

Captain Billy Padavich deposition (Exhibit "E" hereto) at p 18.

6. Defendant Bowman violated the Gallup Police Department's Policies and Procedures when he used force to prevent Lynch from walking away and to get Lynch to the ground at the Rio West Mall location. Controverts and supplements Defendants' Fact Nos. 11, 12, 13, 15, 17 and 20.

Exhibit "F" at ¶ 4.

7. Defendant Bowman violated the Gallup Police Department's Policies and Procedures when he failed to transfer Lynch to the sworn police officer who arrived at the Rio West Mall location. Controverts and supplements Defendants' Facts Nos. 11, 12, 13, 15, 17 and 20.

Deposition of Chief Franklin Boyd (Exhibit "G" hereto) at p. 44, 47; Exhibit "F" at ¶ 4,

¶ 9.

8. It is very common for an intoxicated individual being transported to a detoxification center to punch the side of the transport van.
Controverts and supplements Defendants' Fact No. 28.

Steven Collins deposition (Exhibit "H" hereto) at pp 19-20

9. Bowman should not have requested that Olvera to meet him at NCI, but should instead have called for a police officer. Controverts and supplements Defendants' Fact No. 31

Exhibit "E" at pp. 23-24; Matthew Graham deposition (Exhibit "I" hereto) at pp 11-12; 22; Exhibit "G" at p. 66, 68; Exhibit "F" at ¶ 5.

10. Olvera's actions in administering a choke hold on Lynch was not within the City's Use of Force Policy, and is not taught to officers in training. Controverts and supplements Defendants' Nos. 37 and 38.

Deposition of Neil Yazzie (Exhibit "J" hereto) at pp. 13-14, referencing his incident report (Exhibit "K" hereto); Exhibit "I" at 9-10; Graham Response to Resistance Report (Exhibit "L" hereto).

11. The actions taken by Olvera and Bowman on Lynch violated the United States and New Mexico Constitutions as well as the holdings of established law in the Tenth Circuit and accepted standards, on which the City's Use of Force/Response to Resistance policies are based. Controverts and supplements Defendants' Nos. 37 and 38; 48.

Exhibit "J" at p. 14, p. 24; Exhibit "D" at Rule 314.04.

12. Olvera's actions after Lynch was on the ground at NCI was an excessive use of force.. Controverts and supplements Defendants' Nos. 37 and 38.

Exhibit "J" at p. 14; Exhibit "I" at pp. 7, 10; Graham Response to Resistance Report (Exhibit "L"); Exhibit "F" at ¶¶ 7; 8

13. When Sergeant Martinez-Collins arrived at the scene, Lynch was in a choke hold on the ground. She assisted in handcuffing him and failed to take any action to assist or protect Lynch. Controverts Defendants' 39 and 40.

Video (Exhibit "M" hereto).

14. The Office of the Medical Investigator concluded that the manner of Lynch's death was homicide. Controverts Defendants' Fact No. 46

15. OMI report at p. 1 (attached hereto as Exhibit "N")

The OMI found that while Lynch was restrained by two officers in a prone position, one officer applied pressure to his neck with his forearm and placed his body weight on Lynch while the other officer restrained his legs. Controverts Defendants' Fact No. 46.

Exhibit "N" at p. 2

16. The OMI found that after one minute and twenty seconds of such restraint and pressure, Lynch lost consciousness and never regained it, dying three days later in Presbyterian Hospital. Controverts Defendants' Fact No. 46

Exhibit "N" at p. 2

17. Defendant Bowman's acts and omissions in violation of the Gallup Police Department's Policies and Procedures were a proximate cause of Lynch's death. Controverts Defendants' Fact No. 46

Exhibit "F" at ¶ 4.

18. Bowman's actions in jumping on Lynch's back and laying there was counter to what he had been taught in defensive tactics training. Controverts Defendants' 37, 38, 46.

Exhibit "E" at pp. 20, 26.

19. Olvera and Bowman should have disengaged from Lynch if they could not control him.. Controverts Defendants' 37, 38, 46.

Exhibit "E" at pp. 23, 25-26; Exhibit "I" at pp. 7 - 9; Exhibit "G" at p. 70, 73

20. The choke hold/vascular restraint applied to Lynch when he was on the ground was excessive force not authorized as a defensive tactic within the Gallup Police Department and not taught in training. Controverts Defendants' 37, 38, 46.

Exhibit "E" at p. 24; Exhibit "L"; Exhibit "F" at ¶ 7-9

21. Lynch's resistance while on the ground was not a life threatening situation to Olvera or Bowman, and he did not pose an immediate safety threat to either Defendant. Controverts Defendants' 37, 38, 46.

Exhibit "E" at p. 24; Exhibit "F" at ¶ 8

22. Both Defendants Bowman and Olvera used inappropriate, unreasonable and excessive force on Lynch after he exited the van.. Controverts Defendants' 37, 38, 46.

Exhibit "F" at ¶¶ 7-9

23. The inappropriate, unreasonable and excessive force Defendants Bowman and Olvera used on Lynch caused his death. Controverts Defendants' 37, 38, 46.

Exhibit "F" at ¶¶ 4, 9; Exhibit "N" at pp. 1-2.

24. Olvera was terminated from his employment as a result of his conduct leading to the death of Lynch. Controverts Defendants' 37, 38, 46.

Olvera Notice of Contemplated Action and Notice of Final Action, attached hereto at Exhibit "O" collectively.

25. Bowman was suspended without pay from his employment as a result of his conduct and policy violations leading to the death of Lynch. Controverts Defendants' 37, 38, 46.

Bowman Notice of Contemplated Action (Exhibit "P" hereto); Exhibit "G" at pp 42-45.

9

## PLAINTIFFS' ADDITIONAL UNDISPUTED FACTS

1. The Gallup Police Department failed to properly train Officer Elijah Bowman and Officer Justin Olvera in the following areas: De-escalation and Defusing techniques, Basic Physiology of the Struggle, Neck Restraints, Compressional Asphyxiation, Positional Asphyxiation and Restraint Asphyxiation prior to the unnecessary death of Mr. Rodney Lynch.

Exhibit "F" at ¶10.

## *ARGUMENT*

### Bowman and Olvera's Use of Deadly Force was Not Reasonable

The Defendants correctly note that the transport of an intoxicated person to a detoxification center such as NCI is a seizure under the Fourth Amendment. Motion at p. 14. As they also note, a claim that an officer used excessive force in carrying out such a transport must be analyzed under the standard of objective reasonableness. Id.

Under this standard, the officer's subjective belief that force is necessary is irrelevant. See *Heien v. North Carolina*, 135 S. Ct. 530, 539, 190 L. Ed. 2d 475 (2014): "The Fourth Amendment tolerates only reasonable mistakes, and those mistakes—whether of fact or of law—must be objectively reasonable. We do not examine the subjective understanding of the particular officer involved."

Fourth Amendment claims of excessive force should be reviewed under a standard of *objective* reasonableness, judged from the perspective of a reasonable officer on the scene. See *Graham v. Connor*, 490 U.S. 386, 396-97 (1989)[1]. It has long been well established in the Tenth Circuit that "the reasonableness of [an officer's] actions depends both on whether the officers were in danger at the precise moment that they used force and on whether [the officer's]

---

[1] The Gallup Police Rules and Procedures are based in part on this case. See, ¶314.04 (References).

own reckless or deliberate conduct during the seizure unreasonably created the need to use such force." *Sevier v. City of Lawrence*, 60 F.3d 695, 699 (10th Cir. 1995) (footnote omitted). "Deadly force is justified under the Fourth Amendment if a reasonable officer in Defendants' position would have had probable cause to believe that there was a threat of serious physical harm to themselves or to others." *Estate of Larsen v. Murr*, 511 F.3d 1255, 1260 (10th Cir. 2008) quoting *Jiron v. City of Lakewood*, 392 F.3d 410 (10th Cir. 2004).

As the Defendants observe (Motion at p. 15), "[r]easonableness is evaluated under a totality of the circumstances approach, which requires that [a court] consider and balance the following factors: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Thomson v. Salt Lake County*, 584 F.3d 1304, 1313 (10th Cir. 2009).

As they concede, public intoxication is not a crime in New Mexico. Motion at p. 15, citing NMSA 1978 § 43-2-3. Accordingly, Lynch's intoxication is not a factor in analyzing whether it was reasonable for Defendants Olvera and Bowman to use deadly force on him. They cite to no evidence that he was attempting to evade arrest by flight, and by the time they put him in a choke hold and lay on top of him, he was not actively resisting arrest – if he ever was – and they had no reasonable fear that he posed an immediate threat to anyone. See, Plaintiffs' Fact No. 21; Exhibit "E" at p. 24; Exhibit "F" at ¶ 8.

Any purported fear they might have had was objectively unreasonable and entirely subjective. Moreover, by failing to turn Lynch over to the sworn office who arrived at the Rio West Mall location and by failing to call a sworn officer to meet the van at NCI in violation of policies and procedures, Bowman's reckless conduct unreasonably created the perceived and subjective need to use such force. At the very least, there is a genuine issue of material fact as to

whether Bowman and Olvera's use of deadly force was reasonable. Bowman and Olvera violated the Fourth Amendment's prohibition of the use of excessive force and are not entitled to qualified immunity with respect to this claim.

*Immunity is Waived for Olvera and Bowman under the Tort Claims Act*

The Defendants argue in this Motion that the Plaintiffs can have no claim for loss of consortium because Bowman and Olvera were not law enforcement officers. Motion at p. 19. They make this argument even though the City recently argued that City of Gallup CSAs/PSOs *are* effectively law enforcement officers, and argued vociferously *against* the facts they assert here in support of this Motion. See, City of Gallup's Brief in Support of its Motion for Summary Judgment in *City of Gallup v. Hart*, No. D-1113-CV-2017-00284 (Exhibit "A" hereto). The City of Gallup prevailed on its argument in the *Hart* case. It is in very bad faith for them to now come forth and argue just the opposite – that immunity has not been waived under the New Mexico Tort Claims Act, NMSA 1978 §§ 41-4-1 et seq. (the "TCA") with respect to these defendants because they are *not* law enforcement officers.

Not only should the "facts" the City asserts in its Motion in this case that contradict the "facts" set forth in the *Hart* case be struck, but the City should be judicially estopped from arguing here that the CSA/PSO defendants are not law enforcement officers. See, *Keith v. ManorCare, Inc.*, 2009 NMCA 119, ¶ 36, 147 N.M. 209, 218 P.3d 1257 ("Judicial estoppel is a doctrine that prevents a party who has successfully assumed a certain position in judicial proceedings from then assuming an inconsistent position). "The purpose of the doctrine of judicial estoppel is to stop a party from playing fast and loose with the court during litigation." *Santa Fe Pac. Trust, Inc. v. City of Albuquerque*, 2012-NMSC-028, 32-33, 285 P.3d 595, 604.

See, also *Laughlin v. Convenient Mgmt. Servs.*, 2013-NMCA-088, ¶¶ 16-18, 308 P.3d 992, 997-98, quoting *Citizens Bank v. C & H Constr. & Paving Co.*, 89 N.M. 360, 366, 552 P.2d 796, 802 (Ct. App. 1976).

The City successfully prevailed on its argument that "CSAs are . . police officers. . . based on their duties, authority and appearance." Exhibit "A" at p. 13. By both seeking a ruling that CSA/PSOs are and are not law enforcement officers, the Defendants are playing fast and loose with this Court.

### *This Court must Apply Controlling Precedent from the New Mexico Supreme Court*

When a federal court accepts jurisdiction over state law claims, it must apply "state law with the objective of obtaining the result that would be reached in state court." *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1983); *Butt v. Bank of Am., N.A.*, 477 F.3d 1171, 1179 (10th Cir. 2007); *Mem. Hosp. v. Healthcare Realty Inc.*, 509 F.3d 1225, 1229 (10th Cir. 2007). The federal court "must look first to the words of the state supreme court." *Peña v. Greffet,* 110 F. Supp. 3d 1103, 1132 (D.N.M. 2015)(Browning, J). "If the Court finds only an opinion from the Court of Appeals of New Mexico....., the Court is not bound by the Court of Appeal[s'] decision in the same way that it would be bound by a Supreme Court decision." *Mayer v. Bernalillo Cty.*, 2019 U.S. Dist. LEXIS 3555, quoting *Mosely v. Titus*, 762 F. Supp. 2d 1298, 1332 (D.N.M. 2010)(Browning, J.) (noting that where the only opinion on point is "from the Court of Appeals, . . . the Court's task, as a federal district court sitting in this district, is to predict what the Supreme Court of New Mexico would do if the case were presented to it.")

The City relies on the Court of Appeals' *unpublished* decision in *State v. Becenti*, 2021 N.M. App. LEXIS 48, WL 3825209, finding that public service officers were not peace officers because they are not vested with the duty to maintain public order or make arrests and that the

district court did not err in reducing defendant's criminal charge from battery upon a peace officer to petty misdemeanor battery. The City not only ignores its prior argument that CSAs are peace officers, but fails to note that it is citing an unpublished opinion, and does not attach that opinion to its Motion. The unpublished *Becenti* opinion on which the defendants rely has no precedential value and should not be considered by this Court. See, *Eastland Fin. Servs. v. Mendoza,* 2002-NMCA-035, ¶ 16, 132 N.M. 24, 43 P.3d 375 ("An unpublished opinion is written solely for the benefit of the parties to the action and has no controlling precedential value").

Even if the *Becenti* opinion were published, this Court is required to apply the New Mexico Supreme Court's decision in *State v. Ogden*, 880 P.2d 845, 118 N.M. 234, 1994-NMSC-029, in which it overruled the district court's conclusion that CSOs are not "peace officers" because they are not expressly vested by statute or ordinance with the duty to maintain public order or to make arrests. The New Mexico Supreme Court found, instead, that CSOs are peace officers because they are "full-time salaried officers." Notably, the Defendants make no mention of the controlling decision in *State v. Ogden* although they relied on it heavily in their argument in *Hart* and although this Court is required to apply that decision rather than the unpublished decision of the Court of Appeals they cite.

The individual Plaintiffs' loss of consortium claims are actionable because Bowman and Olvera are law enforcement officers under New Mexico Supreme Court precedent, and because they are estopped from arguing to the contrary. Counts IV and V are viable and should not be dismissed.

*Because the Plaintiffs' Claims for Constitutional Claims are Viable, Their Constitutional Claims Against the City of Gallup and Chief Boyd Should Not Be Dismissed*

The Defendants argue that because claims against the City of Gallup and its Chief of Police, Defendant Boyd, are not actionable in the absence of an underlying constitutional violation, claims against these Defendants are not viable and must be dismissed. Because, as argued above, the Plaintiffs' claims against Defendants Olvera and Bowman are actionable, these claims should not be dismissed. The Plaintiffs are entitled to proceed against these Defendants on their municipal and supervisory liability claims.

## CONCLUSION

Numerous disputed and undisputed issues of material fact that the Defendants simply ignore require that this Court deny their Motion in its entirety. Their reliance on an unpublished case from the New Mexico Court of Appeals and failure to even cite to a controlling opinion of the New Mexico Supreme Court is in bad faith and requires the denial of their Motion, as does their argument directly counter to an argument on which they prevailed in a recent case. The claims that are based on their constitutional and TCA claims are viable because summary judgment may not be granted on the underlying claims. Their Motion must be denied.

Respectfully submitted,

KEELER & KEELER, LLP

*/s/ William R. Keeler*
William R. Keeler
Keeler & Keeler, LLP
235 West Historic Highway 66
Gallup, New Mexico 87301
Telephone: (505) 722-5608
Facsimile: (505) 722-5614
billkeeler@keelerandkeeler.com
*Attorney for Plaintiffs*

**CERTIFICATE OF SERVICE**

  I HEREBY CERTIFY that on this 29th day of November, 2021 a true and correct copy of the foregoing was electronically filed and served to the following:

Thomas Lynn Isaacson
Mason & Isaacson, P.A.
104 East Aztec Avenue
Gallup, New Mexico 87301
(505) 722-4463
tli@milawfirm.net
*Attorneys for Defendants City of Gallup,*
*Elijah Bowman and Franklin Boyd*


Robert W. Becker
YLAW, P.C.
4908 Alameda Blvd, NE
Albuquerque, New Mexico 87113-1736
(505) 266-3995
rbecker@ylawfirm.com
*Attorneys for Defendant Justin Olvera*


            */s/ William R. Keeler*
            William R. Keeler