Effective Date: January 22, 2014 to 07/28/2019 and 05/06/2019

*J. Olvera signed 01/31/2019*
*E. Bowman signed 04/13/2018*

*115 - CSA/CSO Program*

## 115.00 COMMUNITY SERVICE AID PROGRAM

**PURPOSE**

The Gallup Police Department Community Service Aid Program [is to] respond to and handle non-emergency, non-life threatening c[alls or] calls regarding persons impaired by alcohol or drugs, there[by allowing] officers to dedicate a greater amount of time to proactive e[nforcement and in-]depth investigation of criminal and traffic related offenses.

**POLICY AND PROCEDURE**

**DUTIES AND RESPONSIBILITIES**

### 115.01 COMMUNITY SERVICE AID RESPONSIBILITIES

A. Community Service Aids (CSAs) shall promptly obey and supp[ort rules] and policies established by the Chief of Police.

B. CSAs may be dispatched to any call for service within the scope of their responsibility and not otherwise restricted by this policy.

C. If, upon arrival, a CSA determines that a sworn member is necessary due to disputes or evidence of a crime, they will advise the communications center. The communications center will dispatch a sworn member to respond. CSAs are not to use physical means to prevent a person from leaving.

D. If a CSA's response will be delayed due to their unavailability or distance from the scene, a sworn member will be dispatched. No call for service falling within the scope of responsibility of CSAs will be unnecessarily delayed in being dispatched when a sworn member is available to respond.

E. CSAs will report the location and nature of crimes in progress to the local communications centers without becoming personally involved.

F. CSAs will present testimony regarding their official duties.

G. CSAs will perform any other duties as assigned by supervisors and not inconsistent with these policies.

### 115.02 PROTECTIVE CUSTODY

A. CSAs will attempt to locate and respond to reports of individuals impaired by alcohol or drugs to the extent that the person's health and well-being are substantially impaired and endangered.

B. CSAs will transport impaired individuals to an approved treatment facility or as otherwise allowed by law.

C. CSAs will transport impaired persons in a reasonable amount of time depending on the individual's condition (i.e. elderly, disorderly), weather, or when reasonably necessary.

**Exhibit "D"**

D. CSAs will summon medical personnel for highly intoxicated individuals who are unable to walk as a result of the levels of alcohol or drugs, individuals experiencing a medical illness or emergency, or if the individual has a serious injury. CSAs will not transport individuals experiencing any of these conditions.

E. CSAs shall make a diligent effort to determine whether any disabled person is an epileptic or a diabetic or suffers from some other type of illness that would cause the condition, before transport.

F. In seeking to determine whether a disabled person suffers from an illness, CSAs shall make a reasonable search for any identification device and an identification card and examine them for emergency information.

G. CSAs shall not assist sworn personnel with incidents requiring a substantial amount of time while having impaired persons in the CSA's vehicle.

H. CSAs may, if the CSA reasonably believes it necessary for the CSA's own safety, make a protective search of an intoxicated person before transport.

   1. Alcohol or liquor will be discarded at the scene and recorded on in car video, if possible.

   2. Weapons will be secured until destination is reached and item may be returned to intoxicated individual.

   3. If a firearm or illegal substance is found, CSA will notify the communication center and request for a sworn officer to respond.

   4. For safety reasons no bags, luggage or large containers may be carried into the compartment of the CSA vehicle.

I. Protective Custody incidents will take precedence over other activities.

J. CSAs will maintain a clean, sanitized vehicle at the completion of their shift.

## 115.03    TRAFFIC CONTROL

A. CSAs shall provide traffic direction and control at traffic crash scenes, road closures, inoperative or damaged traffic control devices, and other situations which necessitate manual traffic direction.

B. CSAs shall enforce parking violations on public and private property. On private commercial property, the CSA will only issue citations for handicap parking violations and fire lane restrictions.

C. CSAs shall assist with school crossings when directed, to provide for the safety of students in high traffic areas.

D. CSAs shall assist disabled motorists in removing abandoned vehicles which obstruct roadways. Under no circumstances will the CSA push-start any vehicle.

E. Only in the event of a life or death situation where it involves the safety of an animal or child will CSAs utilize a lock out kit to unlock a vehicle.

### 115.04    TOWING VEHICLES

A. CSAs will assist officers with the towing of vehicles at traffic stops, accident investigations or when directed by a supervisor. In the event of an arrest, a CSA may conduct a thorough inventory of the vehicle. If any of the following factors occur, the CSA will advise the officer or a supervisor:

   1. Weapons are found;

   2. Stolen property is found; or

   3. Drugs and/or paraphernalia are found.

B. If a vehicle is abandoned on a public roadway and is causing a clear traffic hazard, a CSA will:

   1. Standby with emergency equipment engaged in an attempt to prevent further collisions.

   2. Standby for a reasonable length of time for the owner. If the owner does not return to the vehicle, a sworn officer will be summoned, who will determine if the vehicle will be towed and, if necessary, issue citation(s).

### 115.05    CALLS NOT AUTHORIZED FOR CSAs to RESPOND

A. CSAs will not handle or respond to the following incidents:

   1. Felony offenses

   2. Audible or silent alarms

   3. Officers in need of assistance (violent situations)

   4. If a CSA is present with an officer and a situation turns volatile, and there is a strong possibility that the officer will be seriously injured or killed, a CSA will intervene to assist the officer until help arrives. A detailed report shall be prepared and submitted in the event the intervention of a CSA becomes necessary.

B. CSAs will not participate in police vehicle pursuits, foot pursuits, the initiation of a traffic stop, or following traffic violators.

C. CSAs will not be used to standby or guard suspects or prisoners or offenders either in the station, in the field or at any detention center.

D. CSAs will not handle a drunk and disorderly call alone. A sworn officer will respond with the CSA and if probable cause exists and the officer witnessed the offense of disorderly conduct, effect an arrest.

### 115.06    SUPERVISION

A. Patrol Sergeants will be responsible for day-to-day supervision of CSAs.

B. A Lieutenant will be assigned to coordinate the CSA program and will:

   1. Provide oversight to the CSA program; and

   2. Compile all necessary reports generated by the CSA program.

### 115.07    SELECTION

A. The Gallup Police Department will establish uniform procedures for selecting individuals for employment as Community Service Aides.

B. Individuals selected for employment as Community Service Aides must meet the minimum qualifications listed in the Job Class Specifications, possess a valid New Mexico driver's license, and successfully complete all steps of the employment process.

### 115.08    TRAINING

A. CSAs must successfully complete all phases of training.

B. CSAs will receive field training provided by a CSA field trainer.

### 115.09    USE OF FORCE

A. CSAs shall use only that force which is reasonable and necessary to overcome resistance, to protect oneself or another, and to effect lawful objectives.

B. CSAs are permitted to use those defensive tactics and non-deadly tools with which they are trained, qualified, and certified with, as determined by training procedures, for the resolution of incidents when force becomes necessary.

C. Every CSA is expected to consider the use of Department approved options, ranging from verbal techniques, hand control procedures, and non-lethal equipment. The following non-deadly force tools are authorized to be issued:

   1. Expandable Baton

   2. Chemical Agents

   3. Handcuffs

D. Supervisors will ensure that a written report is submitted in all instances where a CSA is required to use non-deadly force tools or where either the suspect or CSA receives injuries.

E. When a supervisor feels that a case may require disciplinary action they shall forward a complete written report, including conclusions and recommendations, through the Chain of Command, to the Chief of Police by the end of the supervisor's shift.

F. In the event of a use of force incident, the CSA will notify his or her supervisor and complete a detailed incident report listing witnesses, witness statements, injuries and photos of injuries on the suspect and the CSA.

G. CSAs have no arrest authority; therefore, they will not attempt or make physical arrests. If a situation arises where a physical arrest is indicated, a sworn member will be requested to respond to the scene, and the appropriate supervisor notified.

## 115.10    REPORTING

A. Offense/Incident and other reports will be completed in accordance with the instructions for completing the forms.

B. Reports and activity logs will be turned in at the end of shift.

Effective date: January 8, 2007

### 314.00 USE OF FORCE

Police Officers shall use only that force which is reasonably necessary to protect the sanctity of human life, preserve and protect individual liberties, and to effect lawful objectives. All Police Officers will act in good faith in the exercise of force. The Police Officers' options can range from a continuum of verbal persuasion to deadly force.

In vesting Police Officers with the lawful authority to use force to protect the public welfare, a careful balancing of all human interests is required.

### DEFINITIONS:

### DEADLY FORCE

Any use of force that is likely to cause death or serious physical injury.

### NON-DEADLY FORCE

Any use of force other than that which is considered deadly force.

### SERIOUS PHYSICAL INJURY

A bodily injury that creates a substantial risk of death, causes serious, permanent disfigurement, or results in long-term loss or impairment of the functioning of any bodily member or organ.

### REQUIRED ACTION

Any offensive or non-passive defensive action by an Officer or some intentional action under his /her immediate control.

### REQUIRED ACTION INJURY

Any injury to a suspect that results from offensive or non-passive defensive action by an Officer, or some intentional action under his /her immediate control.

### LESS THAN LETHAL FORCE

Force that is intended to cause or which is likely to cause bodily harm and in certain circumstances may result in death or great bodily injury.

### LESS THAN LETHAL MUNITIONS

Munitions, including bean bag rounds, rubber pellet rounds, foam projectile rounds, and wooden baton rounds, which are designed to incapacitate hostile individuals without causing death or great bodily harm. Although designed to incapacitate without causing death or great bodily injury, there always exists that possibility even when properly deployed.

### BODILY HARM

Any physical injury which causes pain or illness.

E. Where feasible, some warning should be given prior to engaging in the use of deadly force.

F. If an Officer is the victim of an assault which might cause death or serious injury, he is not required to retreat, but may stand his ground and defend himself even to the point that deadly force is required, if the use of force would prevent death or serious injury. The rule of self-defense is applicable, regardless of the age or sex of the assailant.

G. Officers shall not surrender their firearms except as a last resort and only after using every tactical tool at their disposal.

H. Police Officers may utilize deadly force to safely destroy an animal that represents a threat to public safety, as a humanitarian measure where the animal is seriously injured and other alternatives have been exhausted, or when requested by animal control.

I. Police Officers will not intentionally place themselves in the path of a fleeing vehicle and then in self-defense, fire upon the vehicle or its occupants.

J. Police Officers will not discharge a firearm at or from a moving vehicle.

K. Warning shots are prohibited; unless doing so would save the Officer or another from death or serious injury.

### 314.04   USE OF LESS THAN LETHAL MUNITIONS

A. In order to determine which technique or weapon will reasonably de-escalate the incident and bring it under control safely, Police Officers should assess the situations where force is warranted. Police Officers shall use only that force which is reasonably necessary to effect lawful objectives.

B. Police Officers will only use less than lethal force munitions after receiving training and certification in their proper use, and according to Departmental training guidelines.

C. Every effort will be made by Police Officers deploying the munitions to inform other involved Police Officers that a less than lethal munition is being used. The use of less than lethal munitions is authorized when a suspect is placing Police Officers or citizens in imminent threat of death or great bodily harm. The exception to this would be a suicidal subject who is threatening to harm himself and the risk of injury or the severity of injury from a less than lethal response would be less than if the subject was allowed to harm himself.

### 314.05   FIREARMS SAFETY

A. Firearms will be carried in a safe and secure manner. Horseplay as well as flippant and careless behavior, is prohibited.

B. An Officer may draw a firearm from a retaining device, with no intent to use it, when necessary to control a high risk situation, or take a felon into custody.